**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>ARSENAL RESOURCES<br>DEVELOPMENT LLC, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 19-12347 (BLS)<br><br>(Jointly Administered) |
| ARSENAL RESOURCES LLC and<br>ARSENAL MIDSTREAM, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>BAYOU CITY EQUIPMENT, LLC,<br>CAPITAL FOUNDRY LLC,<br>CLEVELAND BROTHERS EQUIPMENT<br>CO., INC., COFANO ENERGY<br>SERVICES, LLC, CROSS COUNTRY<br>INFRASTRUCTURE SERVICES INC.<br>F/K/A CROSS-COUNTRY PIPELINE<br>SUPPLY CO., INC., DARBY<br>EQUIPMENT COMPANY LLC,<br>GEOCORR LLC, PIPELINE SUPPLY &<br>SERVICE, LLC, and UNITED RENTALS<br>(NORTH AMERICA), INC.,<br><br>Defendants. | Adv. Pro. No. 19-51169 (BLS)<br><br><br>**Re:  Adv. D.I. 29** |

## RESPONSE OF UNITED RENTALS (NORTH AMERICA), INC. IN SUPPORT OF MOTION TO INTERVENE AS A DEFENDANT OF GWINNUP'S RESTORATION AND ENVIRONMENTAL SERVICES, INC.

COMES NOW, Interpleader Defendant/Cross-Claim Defendant United Rentals (North

America), Inc. ("UR"), by counsel, and for its Response of United Rentals (North America), Inc.

in Support of Motion to Intervene as a Defendant of Gwinnup's Restoration and Environmental Services, Inc., states as follows:

1.      The Complaint for Interpleader (the "Complaint") filed in this matter seeks to interplead the amount of $1,371,569.22 arising from work performed by Cofano Energy Services, LLC ("Cofano") pursuant to a Master Service Agreement ("MSA") with the Debtor Arsenal Resources LLC  and its affiliates and subsidiaries ("Debtor") related to a project described as the Pritt Well Connect (the "Project").

2.      A true and accurate copy of the MSA as provided by the Debtor is attached hereto as Exhibit 1.

3.      According to its bankruptcy petition and as stated in the MSA, Debtor/Interpleader Plaintiff Arsenal Resources LLC has its principal place of business in Wexford, Pennsylvania.

4.      According to is bankruptcy petition, Debtor/Interpleader Plaintiff Arsenal Midstream, LLC has its principal place of business in Wexford, Pennsylvania.

5.      According to filings with the Pennsylvania Department of State, Cofano is a Pennsylvania limited liability company with its principal place of business in Pittsburgh, Pennsylvania.

6.      According to the Complaint, the current defendants fall into three groups:

      i.      Subcontractors of Cofano who asserted mechanic's liens;

      ii.     Subcontractors of Cofano who did not assert mechanic's liens; and

      iii.    Capital Foundry Funding, LLC who acquired the "rights of payment and collection in its accounts receivable" of Cofano via a "Loan Agreement."

7.      UR provided rental equipment to Cofano and is among the subcontracors to Cofano on the Project who did not assert mechanic's liens.

8.      According to the Motion to Intervene as Defendant, Gwinnup's Restoration and Environmental Services, Inc. ("Gwinnup") similarly is a subcontractor to Cofano on the Project who did not assert a mechanic's lien related to the Project.

9.      Rule 7024 of the Federal Rules of Bankruptcy Procedure states that Rule 24 of the Federal Rules of Civil Procedure applies in adversary proceedings.

10.      Rule 24 of the Federal Rules of Civil Procedure provides that this court

must permit anyone to intervene who . . . claims an interest relating to the property of transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

11.      To determine whether intervention should be granted, this Court must determine (1) whether Gwinnup has a sufficient interest in the litigation, and (2) whether that interest may be impaired by this litigation. *Pennsylvania v. President of the United States*, 888 F.3d 52, 59 (3d. Cir. 2018).

12.       In paragraph 17(d) of the MSA, Debtor and Cofano agreed that the MSA would be "construed and enforced in accordance with Pennsylvania Law without, so far as may be allowed by Law, consideration of any jurisdiction's choice of law principles."

13.      "In Delaware, courts 'are bound to respect the chosen law of the contracting parties, so long as that law has a material relationship to the transaction.'" *In re OSC 1 Liquidating Corp.*, 529 B.R. 825, 831 (Bankr. D. Del. 2015).

14.      Pennsylvania law has a material relationship to the transaction as the transaction is between entities who seemingly all have their principal place of business located in Pennsylvania. *See e.g. Welded Constr. L.P. v. The Williams Cos. (In re Welded Constr., L.P.)*, 609 B.R. 101, 129 (Bankr. D. Del. 2019) (upholding a choice of law provision when only the Defendant had its principal place of business in Oklahoma); *Maloney-Refaie v. Bridge at Sch., Inc.*, 958 A.2d 871,

879 & n.16 (Del. Ch. 2008) (applying a Maryland choice of law provision because a corporate defendant's principal place of business was in Maryland).

15.    Paragraph 3(a) of the MSA requires Cofano to submit with its final invoice

a waiver of all Liens (as defined below) from [Cofano] and a waiver of Lien rights from Contractor's subcontractor of any tier assisting in the performance of any Work ("Subcontractors") pursuant to such Work Order.

16.    Paragraph 3(b) of the MSA states,

Debtor may withhold payment for all such portion of any invoice that it deems necessary until [Cofano] has verified to [Debtor's] reasonable satisfaction that [Cofano] has performed the applicable Work in accordance with this Agreement and any applicable Work Order and has paid all amounts due to any Subcontractors.

17.    Paragraph 13 of the MSA states,

In connection with any Work, Contractor shall pay all legal claims for labor, services and materials and will not permit any liens, charges, or similar encumbrances of any kind to be affixed against the property of the Company or the lease or property of others ("Lien(s)"), and upon the completion of any Work, Contractor shall, if requested, furnish Company with satisfactory evidence of the discharge of all such liens applicable to such Work. Contractor shall indemnify company from and against all costs to discharge any such Lien, and further agrees that any sums due to Contractor by Company may be withheld and applied toward this charge in payment of any such lien.

18.    In *Williard Inc. v. Powertherm Corp.*, 444 A.2d 93, 497 Pa. 628 (1982), the Supreme Court of Pennsylvania addressed the question of whether interpled funds otherwise owed to a general contractor on a construction project were the property of "persons and firms who had 'not been paid in full by [the general contractor] for the labor materials or equipment which they furnished to the Project'" or whether "companies which had rendered services to [the general contractor] in connection with jobs 'unrelated to the Project'" were entitled to a share of those funds.

19.    The trial court determined that only the claimants who debts arose from the relevant project were entitled to the interpled funds on the Project. *Id.* at 96.

4

20.     The decision of the trial court was appealed by an attaching judgment creditor of the general contractor and assignee of the general contractor who asserted that their interests were superior to those of the subcontractors on the project from which the interpled fund arose. *Id.*

21.     On appeal, the intermediate appellate court reversed the decision of the trial court and held that the assignee and judgment creditor's claims had priority because the owner had "no legal liability to the subcontractors" on the relevant project and because subcontractors "were merely general creditors" of the general contractor. *Id.*

22.     Following further appeal, the Supreme Court of Pennsylvania reversed the decision of the intermediate appellate court and held that the subcontractors on the project had priority to the funds on the relevant project under Pennsylvania law. *Id.* at 98.

23.     Specifically, the Supreme Court of Pennsylvania noted that the assignee and the judgment creditor claimed through the general contractor. *Id.* at 97.

24.     The Supreme Court of Pennsylvania further held that, because the contract between the general contract and owner allowed the owner to withhold payment until receipt of satisfactory evidence that subcontractors had been paid, the general contractor had no right to the funds until the subcontractors had been paid. *Id.*

25.      Based on these clauses, the Supreme Court of Pennsylvania further held that the general contractors had no interest in the contract balance and, therefore, "it must obvious that only the [subcontractors] have a cognizable interest in the fund." *Id.*

26.     In *Trevdan Bldg. Supply v. Toll Bros.,* 996 A.2d 520 (Pa. Super 2010), the Superior Court of Pennsylvania affirmed the principles established in *Williard.*

27.     In *Trevdan Bldg. Supply* a residential builder interpled funds otherwise owed to a subcontractor on a given project for a determination of whether a material supplier on that project

had priority to the funds or whether a purchaser of subcontractor's receivables whose interests were perfected by a financing statement had priority to the funds. *Id.* at 521-22.

28.    Like the Supreme Court of Pennsylvania in *Williard*, the Superior Court of Pennsylvania in *Trevdan Bldg. Supply* determined that the supplier had priority to the funds in question based on its equitable lien on such funds that arises under Pennsylvania law. *Id.* at 524.

29.    Moreover, the Superior Court of Pennsylvania determined that the purchaser, whose rights were derivative of the those of the subcontractor, had no rights to the funds because the relevant contract obligated to pay subcontractors. *Id.* at 526.

30.    Under Pennsylvania law, as applicable to the MSA pursuant to its choice of law provision, there is clearly a proper basis to allow the intervention of Gwinnup in this matter for a determination of the respective rights of all claimants.

31.    Gwinnup—much like the similarly situated UR—meets the legal requirement of having a claim against the interpled funds and that its claim against the funds will be impaired in the event it is not allowed to intervene.

32.    Allowing the intervention further supports the "purpose of interpleader by minimizing the possibility of multiple litigation and the threat of inconsistent results." *Bache Halsey Stuart Shields, Inc. v. Garmaise*, 519 F. Supp. 682, 687 (S.D.N.Y 1981) (cited affirmatively on this point in *Atcom Support LP v. M/V HC Nadia Maria*, 2016 U.S. Dist. LEXIS 100151 (D. Del. 2016)).

33.    Gwinnup and any other subcontractor of Cofano on the relevant project should be allowed to intervene such that any settlement or judgment as to the entitlement to the funds sought to be interpled is resolved fully and finally.

34.     While perhaps strange facts make for strange bedfellows, the Motion to Intervene should be granted and Gwinnup and any other potential subcontractor claimant should be brought into the case for a full and final resolution of any claims to the funds in question.

WHEREFORE, Interpleader Defendant/Cross Claim Defendant United Rentals (North America), Inc. respectfully requests that the Motion to Intervene as a Defendant of Gwinnup's Restoration and Environmental be granted.

**SEITZ, VAN OGTROP & GREEN, P.A.**

/s/ R. Karl Hill
R. KARL HILL (2747)
222 Delaware Avenue, Suite 1500
Wilmington, DE 19801
302-888-7604
E-Mail: khill@svglaw.com

and

**FULLERTON & KNOWLES, P.C.**

Paul Schrader, Esq.
(Pro hac vice to be filed)
12642 Chapel Rd.
Clifton, VA  20124
703-818-2600, x209
E-Mail: pschrader@fullertonlaw.com

Counsel for Defendant
United Rentals (North America), Inc.

February 19, 2020