

# MASTER SERVICE AGREEMENT

This MASTER SERVICE AGREEMENT (this "Agreement") is entered into as of January 30, 2019 by and between Arsenal Resources LLC, a West Virginia limited liability company with offices at 6031 Wallace Road Extension, Suite 300, Wexford, PA 15090, its affiliates and subsidiaries ("Company") and Cofano Energy Services, LLC, a Pennsylvania limited liability company with offices at 3067 Woodridge Drive, Pittsburgh, PA 15227 ("Contractor"). Company and Contractor are sometimes referred to in this Agreement collectively as, the "Parties" and individually as, a "Party."

WHEREAS, Company is engaged in the business of conducting oil and gas operations, and in the course of such operations, regularly and customarily enters into contracts with independent contractors for the performance of services relating thereto;

WHEREAS, Company maintains an approved list of service contractors to perform services for Company, pursuant to the terms and conditions set forth in this Agreement, as requested from time to time by Company; and

WHEREAS, Contractor is a service contractor engaged in the business of pipeline installation and compressor station construction and desires to perform work as an independent contractor for Company from time to time as requested by Company.

NOW, THEREFORE, in consideration of the mutual promises and agreements herein contained, the sufficiency of which is hereby acknowledged, and intending to be legally bound hereby, the Parties agree as follows:

1. **Scope**. Upon the execution of this Agreement, Company agrees that the name of Contractor will be added to Company's approved list of contractors and this Agreement will thereupon remain in force and effect until terminated by either Party by giving the other Party 30 days' prior written notice, unless terminated in accordance with Article 4 hereof; provided however, that the terms and conditions of this Agreement will govern any Work (defined below) to be performed or Work in progress at the time of any termination, and will continue to govern such Work and any liability, including without limitation any warranty or indemnity obligations, that may arise from the performance of any such Work pursuant to this Agreement. This Agreement will control and govern all services and/or equipment, manufactured articles, materials, machinery and supplies conveyed, supplied or rented to Company ("Goods") to be provided by Contractor to Company ("Work"), including any Work performed under any verbal and/or printed work orders, delivery tickets or other like instruments ("Work Order(s)"). Any provisions, agreements or stipulations in any such Work Orders used by Contractor not in conformity with the terms and provisions hereof will be null and void, unless such Work

7232507.7



Order is executed by an officer or employee with a title of Director or above of Company and specifically identifies the provision of this Agreement to be superseded.

2.  **Non-Exclusive.** This Agreement does not obligate Company to order any Work from Contractor, nor does it obligate Contractor to accept orders for Work from Company, but this Agreement, together with any applicable Work Orders will control and govern all Work and will define the rights and obligations of Company and Contractor during the term hereof. This Agreement is not exclusive and both Company and Contractor may enter into similar contracts with any third parties at their sole discretion.

3.  **Payment, Invoices, and Audits.**

   (a)  The compensation payable to Contractor, unless otherwise provided by any applicable law, rule, regulation or order ("Law(s)"), will be that agreed to by Company and Contractor at the time the applicable Work Order is given. Invoices shall be submitted to Company monthly or upon completion of Work, whichever time period is shorter. Company will pay Contractor's invoices within 45 days of receipt thereof, unless prepayment is required by Law; provided, however, that if Company disputes any part of an invoice, the undisputed amount will be paid and notice of the disputed amount will be provided to Contractor. A discount of 1% will be extended to Company for all Invoices paid within 30 days of receipt. All of Contractor's invoices issued hereunder must (i) be submitted to Company in accordance with Company's invoice submission instructions (as provided to Contractor), and must (ii) reference the applicable Work Order number, the employee of Company that requested the applicable Work and any applicable account codes or order numbers as provided in the applicable Work Order, and (iii) be accompanied by reasonable supporting documentation. Contractor's final invoice issued pursuant to any Work Order must be accompanied by a waiver of all Liens (as defined below) from Contractor and a waiver of Lien rights from Contractor's subcontractors of any tier assisting in the performance of any Work ("Subcontractors") pursuant to such Work Order. Any changes to these terms must be in writing and pre-approved by the Company. **Contractor waives its right to payment pursuant to a Work Order for any amounts not invoiced within 120 days from the date on which the applicable Work was performed.**

   (b)  Payment by Company of Contractor's invoices will be without prejudice to Company's right to dispute them. Company may withhold payment for all or such portion of any invoice that it deems necessary until Contractor has verified to Company's reasonable satisfaction that Contractor has performed the applicable Work in accordance with this Agreement and any applicable Work Order and has paid all amounts due to any Subcontractors.



(c) Contractor shall maintain and retain, while this Agreement is in effect and for not less than two years following the termination of this Agreement, complete and accurate records of all of Contractor's costs chargeable to Company under this Agreement. Company will have the right, at reasonable times, to inspect and audit those records, using its own representatives, including without limitation any public accounting firm. The records to be maintained and retained by Contractor shall include, without limitation: (i) payroll records accounting for total time distribution of Contractor's employees working full or part-time on any Work (to permit tracing to payroll records and related tax returns), as well as canceled payroll checks, or signed receipts for payroll payments in cash; (ii) invoices for purchases, receiving and issuing documents, and all other unit inventory records for Contractor's stock or capital items; (iii) paid invoices and canceled checks for materials purchased and for Subcontractors and any other third party charges (including, but not limited to, equipment rentals); and (iv) travel and entertainment documentation (including, but not limited to, employee expense reports and Contractor facility usage reports).

4. **Termination**. Company shall have the right, in addition to any other rights or remedies it may have hereunder or by Law, to terminate this Agreement immediately upon the giving of written notice if: (i) Contractor enters into voluntary or involuntary bankruptcy or receivership proceedings, or makes an assignment for the benefit of creditors; (ii) a change in ownership or control of Contractor occurs; (iii) Contractor violates any applicable Laws; or (iv) Contractor breaches any representation or warranty in this Agreement.

5. **Confidentiality**.

(a) All information in any way related to or connected with the Work and/or this Agreement (including the terms and conditions hereof, any geological or operational information obtained while performing the Work, and all other information provided by the Company or any of its officers, employees or consultants (each officer, employee or consultant individually a "Representative" and collectively the "Representatives") to Contractor or its Representatives in connection with the Work) is proprietary to Company, confidential, and shall not be divulged by Contractor or its Representatives ("Confidential Information"), except as provided in this Article 5, without Company's prior written consent.

(b) Contractor shall not use Confidential Information for any purpose other than for the performance of Work provided under this Agreement or enforcement of the terms of this Agreement.

7232507.7



(c)     Contractor may disclose Confidential Information to its Representatives, and with Company's prior written consent to its Subcontractors (who will be considered Representatives for the purposes of this Article 5) as may be necessary for Contractor to perform hereunder or as may be necessary for Contractor to prepare tax returns, obtain advice and counsel, obtain insurance, and obtain or comply with the terms of any financings. Contractor shall inform such Representatives of the confidential nature and restriction on use of the Confidential Information and will be liable for any such current or former Representative's failure to comply with the terms of this Article 5 as if Contractor had failed to so comply.

(d)     If Contractor or any Representative to whom Contractor has properly disclosed Confidential Information is compelled by applicable Law or legal process to disclose any Confidential Information, then Contractor shall promptly notify Company in writing of such requirement and shall cooperate fully to seek an appropriate protective order or other confidential protection at Company's cost and expense, to the fullest extent possible.

(e)     Contractor acknowledges that any breach or threatened breach of the terms of this Article 5 by Contractor or Contractor's Representatives will cause irreparable harm to Company for which money damages would not be a sufficient remedy and that Company will be entitled to seek injunctive or other equitable relief for any such breach or threatened breach without being required to post any bond or other security. The foregoing is not intended to prejudice any legal remedy available to Company.

(f)     Confidential Information does not include any information that (i) is or becomes public through no fault of Contractor or Contractor's Representatives, (ii) was or is disclosed to Contractor or Contractor's Representatives by a third party that is not under any confidentiality obligation to Company, and (iii) is developed by Contractor or Contractor's Representatives without reference to any Confidential Information.

(g)     The provisions of this Article 5 will remain in effect for five years after any termination of this Agreement.

6.     **Warranties and Covenants**.

(a)     Contractor warrants: (i) that it has the required skill, experience and qualifications to perform the Work; (ii) that all Work will be performed or rendered safely and in a good and workmanlike manner in accordance with generally recognized industry standards and in compliance with this Agreement; (iii) that Contractor shall perform the Work in compliance with the Law, including without limitation all safety codes, statutes, regulations and procedures; (iv) that Contractor shall participate in onboarding safety training as directed by the Company and shall adhere to Company's



safety policies as presented; (v) that it has adequate equipment in good working order and fully trained, experienced and supervised personnel capable of efficiently and safely operating such equipment and performing all Work; (vi) that all Work shall be conducted by employing all required, necessary or desirable protective equipment and devices; and (vii) that Contractor regularly conducts training and safety programs.

(b) All Goods furnished by Contractor in the performance of any Work shall be of suitable merchantable quality and workmanship for their intended purposes, in accordance with all specifications, free from defects and shall not infringe or misappropriate any third party's patent or intellectual property rights. These warranties shall survive any delivery, inspection, acceptance or payment of or for the Goods by Company. Contractor shall, at its sole cost and expense, promptly within 10 days, (i) replace or repair any defective or nonconforming Goods, and (ii) pay for all related expenses for the return of the defective or nonconforming Goods and for the delivery of the repaired or replaced Goods to Buyer, and if applicable, the repair or re-performance of the applicable Work. To the extent the Goods are sourced by Contractor from third parties which provide warranties with respect thereto, Contractor will take all available steps for those warranties to be assigned to Company so that it can enforce such warranties without the participation of Contractor. In the event that such warranties are not assignable, Contractor shall cooperate with and assist the Company in Company's efforts to enforce such warranties.

(c) Contractor covenants that Contractor will not employ, and will require that each Subcontractor providing services hereunder to covenant that it will not employ, any person whose employment violates any applicable Law, including without limitation, any labor or immigration Laws.

(d) Contractor shall grant Company full access to all Work and allow Company to inspect any Work at any time. No inspection or failure to inspect by Company will constitute approval of any Work or a waiver of any of Company's rights or remedies or relieve Contractor of any of its obligations under this Agreement.

7. **Independent Contractor**. In the performance of any Work hereunder, Contractor will be deemed an independent contractor, with the authority and right to direct and control all of the details of all Work, Company being interested only in the result obtained. However, all Work must meet the approval of Company and will be subject to a general right of inspection. Company will have no right or authority to supervise or give instructions to the Representatives of Contractor, but such Representatives at all times will be under the direct supervision and control of Contractor. This Agreement is not intended by either Party to create any agency, partnership or

7232507.7

employment relationship between them or between them and their respective employees. Neither Party shall have any authority to bind the other Party.

8. **Indemnity.**

(a) CONTRACTOR AND COMPANY AGREE TO ALLOCATE BETWEEN THEMSELVES RESPONSIBILITY FOR LOSSES INVOLVING PERSONAL INJURY, ILLNESS, DEATH AND/OR PROPERTY DAMAGE OR LOSS, WHICH MAY ARISE OUT OF OR IN CONNECTION WITH THIS AGREEMENT. FOR THE PURPOSES OF THIS AGREEMENT, THE FOLLOWING DEFINITIONS APPLY:

i. "COMPANY GROUP" MEANS COMPANY, COMPANY'S CONTRACTORS (OTHER THAN CONTRACTOR AND OTHER MEMBERS OF CONTRACTOR GROUP) OF ANY TIER, COMPANY'S CO-INTEREST OWNERS, JOINT VENTURERS, CO-LESSEES, AGENTS, PARTNERS, SUCCESSORS AND ASSIGNS, AND ITS AND THEIR RESPECTIVE AFFILIATES, AND ALL OF THEIR RESPECTIVE SHAREHOLDERS, MEMBERS, MANAGERS, OWNERS, OFFICERS, DIRECTORS, EMPLOYEES, REPRESENTATIVES, CONSULTANTS, AND AGENTS.

ii. "CONTRACTOR GROUP" MEANS CONTRACTOR, CONTRACTOR'S SUBCONTRACTORS, OF ANY TIER, AND ITS AND THEIR RESPECTIVE AGENTS, PARTNERS, SUCCESSORS AND ASSIGNS, AND ITS AND THEIR RESPECTIVE AFFILIATES, AND ALL OF THEIR RESPECTIVE SHAREHOLDERS, MEMBERS, MANAGERS, OWNERS, OFFICERS, DIRECTORS, EMPLOYEES, REPRESENTATIVES, CONSULTANTS AND AGENTS.

iii. "AFFILIATE" MEANS ANY PERSON CONTROLLING, CONTROLLED BY, OR UNDER COMMON CONTROL WITH ANOTHER PERSON. THE TERM "CONTROL" AS USED IN THE PRECEDING SENTENCE MEANS, WITH RESPECT TO AN ENTITY, THE RIGHT TO EXERCISE, DIRECTLY OR INDIRECTLY, MORE THAN FIFTY PERCENT OF THE VOTING RIGHTS ATTRIBUTABLE TO THE EQUITY OF SUCH ENTITY, AND WITH RESPECT TO ANY PERSON OTHER THAN AN ENTITY, THE POSSESSION, DIRECTLY OR INDIRECTLY, OF THE POWER TO DIRECT OR CAUSE THE DIRECTION OF SUCH PERSON'S ACTIONS.

iv. "PERSON" MEANS ANY INDIVIDUAL, CORPORATION, LIMITED LIABILITY COMPANY, GENERAL OR LIMITED PARTNERSHIP, BUSINESS TRUST, UNINCORPORATED ASSOCIATION, OR ANY OTHER ENTITY.

v. "CLAIM" MEANS DAMAGE, LOSS, LIABILITY, CLAIMS, DEMANDS, JUDGMENTS, AWARDS, COSTS, SUITS, LOSSES, PENALTIES AND CAUSES OF ACTION OF EVERY KIND AND CHARACTER, WHETHER CONTRACT, TORT, BREACH OF WARRANTY, STRICT LIABILITY OR OTHERWISE, INCLUDING ENVIRONMENTAL, COSTS (INCLUDING ALL COSTS AND EXPENSES THEREFOR, COSTS OF INVESTIGATION, REMOVAL, REMEDIATION AND GOVERNMENTAL OVERSIGHT COSTS AND REASONABLE ATTORNEYS' FEES ASSOCIATED

THEREWITH), INCLUDING THE COST OF ENFORCING ANY INDEMNIFICATION RIGHTS HEREUNDER, ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT, THE PERFORMANCE OF WORK HEREUNDER OR IN CONNECTION HEREWITH, AND/OR THE PROVISION OF GOODS.

(b)   TO THE FULLEST EXTENT PERMITTED BY LAW, CONTRACTOR WILL BE RESPONSIBLE FOR AND AGREES TO RELEASE, PROTECT, DEFEND, INDEMNIFY AND HOLD HARMLESS EACH MEMBER OF THE COMPANY GROUP FROM AND AGAINST ANY AND ALL CLAIMS, INCLUDING CLAIMS ARISING FROM THE SOLE, JOINT, COMPARATIVE, CONTRIBUTORY OR CONCURRENT NEGLIGENCE OF ANY MEMBER OF THE COMPANY GROUP, FOR PERSONAL INJURY, ILLNESS, DEATH AND/OR PROPERTY DAMAGE OR LOSS BROUGHT BY OR THROUGH ANY MEMBER OF CONTRACTOR GROUP, UNLESS SUCH CLAIM AROSE DUE TO THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF SUCH MEMBER OF COMPANY GROUP. CONTRACTOR'S, OR ANY SUBCONTRACTOR'S, PROTECTION FROM DIRECT SUIT UNDER ANY WORKERS' COMPENSATION LAWS WILL NOT LIMIT CONTRACTOR'S INDEMNITY OBLIGATIONS HEREUNDER IN ANY MANNER, AND CONTRACTOR HEREBY EXPRESSLY WAIVES ALL IMMUNITIES AND DEFENSES THAT IT MAY HAVE UNDER SUCH LAWS.

(c)   TO THE FULLEST EXTENT PERMITTED BY LAW, COMPANY WILL BE RESPONSIBLE FOR AND AGREES TO RELEASE, PROTECT, DEFEND, INDEMNIFY AND HOLD HARMLESS EACH MEMBER OF THE CONTRACTOR GROUP FROM AND AGAINST ANY AND ALL CLAIMS, INCLUDING CLAIMS ARISING FROM THE SOLE, JOINT, COMPARATIVE OR CONCURRENT NEGLIGENCE OF ANY MEMBER OF THE CONTRACTOR GROUP, FOR PERSONAL INJURY, ILLNESS, DEATH AND/OR PROPERTY DAMAGE OR LOSS BROUGHT BY OR THROUGH ANY MEMBER OF THE COMPANY GROUP, UNLESS SUCH CLAIM AROSE DUE TO THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF SUCH MEMBER OF CONTRACTOR GROUP. COMPANY'S PROTECTION FROM DIRECT SUIT UNDER ANY WORKERS' COMPENSATION LAWS WILL NOT LIMIT COMPANY'S INDEMNITY OBLIGATIONS HEREUNDER IN ANY MANNER, AND COMPANY HEREBY EXPRESSLY WAIVES ALL IMMUNITIES AND DEFENSES THAT IT MAY HAVE UNDER SUCH LAWS.

(d)   TO THE FULLEST EXTENT PERMITTED BY LAW, CONTRACTOR WILL BE RESPONSIBLE FOR AND AGREES TO RELEASE, PROTECT, DEFEND, INDEMNIFY AND HOLD HARMLESS EACH MEMBER OF THE COMPANY GROUP FROM ANY CLAIM BY OR THROUGH ANY GOVERNMENT AGENCY OR OTHERWISE FOR ANY VIOLATION BY ANY MEMBER OF CONTRACTOR GROUP OF ANY APPLICABLE LAW ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT AND/OR PERFORMANCE OF WORK HEREUNDER OR IN CONNECTION HEREWITH.

(e)   CONTRACTOR ASSUMES FULL RESPONSIBILITY FOR AND AGREES TO RELEASE, PROTECT, DEFEND, INDEMNIFY, AND HOLD HARMLESS COMPANY GROUP FROM



AND AGAINST ALL CLAIMS WHICH ARISE OUT OF, ARE IN CONNECTION WITH, OR RELATE TO GOVERNMENTAL FINES, ASSESSMENTS OR PENALTIES, INCLUDING, WITHOUT LIMITATION, ANY IMPOSED BY FEDERAL OR STATE ENVIRONMENTAL PROTECTION AGENCIES WHICH ARISE OUT OF, ARE IN CONNECTION WITH, OR ARE INCIDENT TO OR RESULT DIRECTLY OR INDIRECTLY FROM CONTRACTOR GROUP'S PROVISION OF THE SERVICES, GOODS OR EQUIPMENT UNDER THIS AGREEMENT OR FROM CONTRACTOR GROUP'S PERFORMANCE OR NONPERFORMANCE OF THIS AGREEMENT.

(f)  CONTRACTOR ASSUMES FULL RESPONSIBILITY FOR AND AGREES TO RELEASE, PROTECT, DEFEND, INDEMNIFY AND HOLD COMPANY GROUP HARMLESS FROM AND AGAINST ANY AND ALL LOSSES OF EVERY KIND AND CHARACTER ON ACCOUNT OF POLLUTION OR CONTAMINATION (EXCEPT UNDERGROUND), INCLUDING CONTROL AND REMOVAL THEREOF, WHICH ARISE OUT OF, ARE IN CONNECTION WITH, OR ARE INCIDENT TO OR RESULT DIRECTLY OR INDIRECTLY FROM CONTRACTOR GROUP'S PROVISION OF THE SERVICES, GOODS OR EQUIPMENT UNDER THIS AGREEMENT OR FROM CONTRACTOR GROUP'S PERFORMANCE OR NONPERFORMANCE OF THIS AGREEMENT.

(g)  EACH PARTY AGREES TO PROMPTLY NOTIFY THE OTHER PARTY OF ANY CLAIM PRESENTED TO OR SERVED UPON IT BY ANY PERSON IN CONNECTION WITH THIS AGREEMENT AND/OR PERFORMANCE OF WORK HEREUNDER OR IN CONNECTION HEREWITH. THE PARTY SEEKING INDEMNIFICATION SHALL AFFORD THE OTHER PARTY A REASONABLE OPPORTUNITY TO ASSUME THE DEFENSE OF SUCH CLAIM.

(h)  EXCEPT AS OTHERWISE EXPRESSLY LIMITED BY THIS AGREEMENT OR BY LAW, IT IS THE INTENT OF THE PARTIES THAT ALL INDEMNITY OBLIGATIONS AND OTHER LIABILITIES ASSUMED BY SUCH PARTIES UNDER THE TERMS OF THIS AGREEMENT WILL BE WITHOUT LIMIT AND WITHOUT REGARD TO THE CAUSE OR CAUSES THEREOF INCLUDING PREEXISTING CONDITIONS, STRICT LIABILITY, OR THE NEGLIGENCE OF ANY MEMBER OF CONTRACTOR GROUP OR COMPANY GROUP, WHETHER SUCH NEGLIGENCE BE SOLE, JOINT, COMPARATIVE OR CONCURRENT; OR ACTIVE, PASSIVE, OR GROSS.

(i)  CONTRACTOR AGREES TO INDEMNIFY COMPANY GROUP FROM AND AGAINST ANY CLAIMS DIRECTLY OR INDIRECTLY RESULTING FROM ANY BREACH OF WARRANTIES UNDER ARTICLE 6.

9.  **Insurance**.

(a)  Contractor shall, and shall cause its Subcontractors to, at all times during the progress of any Work carry and maintain insurance of such type and with such limits as set out in Exhibit A, which is attached hereto and made a part hereof (with respect to any Subcontractor, if any of the insurance coverage specified in Exhibit A is not



applicable to the type of work or services being performed by such Subcontractor, then such Subcontractor will not be required to carry such non-applicable coverage). All such policies must be issued by insurance companies that are solvent, reasonably satisfactory to Company, and have an AM Best Rating of A- or higher. Before performing any Work, Contractor shall furnish and shall cause each of its Subcontractors to furnish, Company with certificates from their insurers and a copy of policy endorsements evidencing coverage as specified in Exhibit A (subject to the proviso above with respect to non-applicable coverage) and, for commercial general liability, automobile, and umbrella insurance coverage, as specified in Section 9(b) below. Contractor shall cause each of its Subcontractors to notify Contractor of any cancellation or any material changes to such coverage at least 30 days before the effective date of such cancellation or change, and Contractor shall notify Company of any such change in any Subcontractor's coverage promptly upon receiving notice from such Subcontractor and shall notify Company of any cancellation or any material changes to Contractor's coverage at least 30 days before the effective date of such cancellation or change to such coverage. If Contractor fails to perform any of its obligations hereunder with respect to insurance, with or without the knowledge or consent of Company, then Contractor will itself be an insurer to the extent it has failed to perform such obligations. The minimum insurance requirements set forth in Exhibit A are not intended in any way to limit the extent of Contractor's indemnity obligations provided for in Article 8 above.

(b) Contractor covenants and agrees that all of its, and its Subcontractors', general commercial liability, automobile, and umbrella insurance policies will: (i) name each member of the Company Group as additional insureds, as their interests may attach, (ii) provide that the inclusion of additional insureds will not in any way affect the rights of any insureds as respects any claim, demand, suit or judgment made, brought or recovered, by or in favor of any other insured, or by or in favor of any employee of such other insured, such that the policy will protect each insured in the same manner as though a separate policy had been issued to each; (iii) waive any right of subrogation against the members of the Company Group; and (iv) be primary with respect to any liability assumed under this Agreement.

(c) Company covenants and agrees that all of its general commercial liability, automobile, and umbrella insurance policies will: (i) name each member of the Contractor Group as additional insureds, as their interests may attach, (ii) provide that the inclusion of additional insureds will not in any way affect the rights of any insureds as respects any claim, demand, suit or judgment made, brought or recovered, by or in favor of any other insured, or by or in favor of any employee of such other insured, such that the policy will protect each insured in the same manner as though a separate policy had been issued to each; (iii) waive any right of subrogation against the members of the

7232507.7



Contractor Group; and (iv) be primary with respect to any liability assumed under this Agreement.

10. **Reporting Incidents**. In the event of: (a) an accident or occurrence resulting in injury or death; (b) a spill or release of pollutants; (c) loss of or damage to property; or (d) any other emergency, arising out of or in connection with any Work, Contractor will notify Company as soon as practicable and furnish Company with a copy of all non-privileged reports made by Contractor or any Subcontractor to Contractor's or such Subcontractor's insurer, government agencies or to others of such accidents and occurrences.

11. **Compliance with Law**. Contractor shall, and shall require all Subcontractors to, comply with all Laws, which are now or may hereafter become applicable to Contractor's or any Subcontractor's business, equipment or personnel engaged in operations covered by this Agreement. Contractor will be responsible for making all reports and notifications required by Law to appropriate government agencies regarding the identity, composition and amount of hazardous chemicals, substances and/or materials, if any, used or brought by Contractor or any Subcontractor to the worksite. Contractor shall obtain, and shall require its Subcontractors to obtain, without any charge back to Company, any permit or license required by any Laws relating to any Work. Contractor shall, and shall require all Subcontractors to, comply with all drug and alcohol testing provisions required by Law. Upon Company's request, Contractor shall provide Company with a copy of Contractor's and any Subcontractor's written drug and alcohol testing policy.

12. **Taxes**. Contractor shall and shall cause each Subcontractor to pay all taxes, licenses and fees levied or assessed on Contractor or any Subcontractor in connection with or incident to the performance of this Agreement or any related subcontract by any governmental agency and shall pay or withhold for payment any required unemployment compensation insurance, old age benefits, social security or any other required payments or withholdings upon or of the wages of Contractor's or any Subcontractor's employees. Contractor agrees to reimburse Company on demand for all of such taxes or fees, which Company may be required or deem it necessary to pay on account of employees of Contractor or its Subcontractors. Contractor shall furnish Company with the information required to enable Company to make such necessary reports and to pay such taxes or governmental charges. At its election, Company is authorized to deduct all sums so paid by Company for such taxes and governmental charges from such amounts as may be or become due to Contractor hereunder.

13. **Payment of Third Parties**. In connection with any Work, Contractor shall pay all legal claims for labor, services and materials and will not permit any liens, charges, or

similar encumbrances of any kind to be affixed against the property of Company or the lease or property of others ("Lien(s)"), and upon the completion of any Work, Contractor shall, if requested, furnish Company with satisfactory evidence of the discharge of all such Liens applicable to such Work. Contractor shall indemnify Company from and against all costs to discharge any such Lien, and further agrees that any sums due to Contractor by Company may be withheld and applied toward this charge in payment of any such Lien.

14.   **Force Majeure**.   A Party will not be in breach of this Agreement if its performance hereunder, other than an obligation to make payment, is prevented or unreasonably hindered by an event that is not within such Party's reasonable control nor contributed to by the negligence or willful misconduct of such Party or any of its Representatives, including but not limited to, acts of God, flood, fire, epidemic, terrorism, riot, war, labor disputes, or actions or failures to act by any government agency (except to the extent that such actions or failures to act by any government agency were sought by the Party whose performance is affected thereby or are due to the failure of such Party to pursue with reasonable diligence any approval required by such government agency), that prevents a Party from performing its obligations hereunder ("Event of Force Majeure"); provided, however, that such Party shall undertake commercially reasonable efforts to mitigate the effects of such Event of Force Majeure. Notwithstanding the foregoing, neither Party will have any obligation to settle any labor dispute that constitutes an Event of Force Majeure hereunder. The Party claiming an Event of Force Majeure shall provide written notice to the other Party within 5 days of the Event of Force Majeure shall use all diligent efforts to end the failure and/or delay of its performance, to minimize the effects of the Event of Force Majeure, and promptly resume performance hereunder. Either Party may terminate any Work Order if performance in connection with such Work Order is delayed by 60 consecutive days or 90 days in the aggregate by the same Event of Force Majeure and neither Party will have any further obligation to the other in connection with such Work Order except to the extent that such obligations accrued prior to such Event of Force Majeure. Contractor will deliver title and/or control of all material and Work in progress to Company, to the extent that Company has paid for such material and Work in progress pursuant to any such terminated Work Order.

15.   **Infringement Indemnity**.  Contractor shall defend, indemnify and hold Company harmless from and against all Claims for any patent, copyright or trademark infringement or trade secret misappropriation resulting from any Work.

16.   **Dispute Resolution**.

(a)   If a dispute arises between the Parties regarding this Agreement or either Party's performance hereunder, the Parties shall use the procedure described herein to

resolve the dispute. Notwithstanding the foregoing, either Party may seek equitable relief in the state or federal courts situate in Pennsylvania.

(b) If the Parties' respective project managers are unable to resolve the dispute after making reasonable efforts to do so, either Party may give notice to the other that it is invoking this dispute resolution procedure ("Dispute Notice"), whereupon the Parties shall cooperate in good faith to schedule an in-person meeting with a senior executive from each Party during which the relevant personnel from each Party shall present their respective positions regarding the dispute and the senior executives will negotiate in good faith to settle the dispute.

(c) If the process described in Section 16(a) does not resolve or settle the dispute within 30 days after delivery of the Dispute Notice (or such longer period as the Parties may agree), then either Party may file a claim with the American Arbitration Association (the "AAA") and thereafter the dispute will be subject to binding arbitration pursuant to the AAA Commercial Dispute Resolution Rules. All in-person arbitration proceedings will be conducted in Pittsburgh, Pennsylvania. Each Party will bear its own costs of arbitration, including its attorneys' fees, except that the arbitrator may award any fees and costs associated with the arbitration proceeding to the prevailing Party if the arbitrator determines that such an award is merited.

17. **Miscellaneous.**

(a) <u>Successors and Assigns</u>. This Agreement will be binding upon the Parties hereto and, as applicable, their respective heirs, successors or assigns.

(b) <u>Assignment</u>. Contractor shall not assign this Agreement or any part of it, or subcontract any services to be performed hereunder, without prior written approval from Company, which may be unreasonably withheld by the Company, and Contractor will remain obligated hereunder notwithstanding any such assignment or subcontracting.

(c) <u>Notice</u>. Any notices provided for herein will be deemed to have been received by the Party to which it is sent on the day it is delivered (or the next business day if it is delivered on a weekend or holiday) if it is sent via overnight courier, certified mail (return receipt requested), or email (with confirmation of receipt) to the Party representative designated below at the address or email address for such representative, as the same may be changed by either Party from time to time by notice to the other Party:



CONTRACTOR:

Cofano Energy Services, LLC
ATTN: Kurt Cofano, CEO
3067 Woodridge Drive
Pittsburgh, PA  15227

Telephone No: 412-721-1223
Email: kurt@cofanoenergy.com

COMPANY:

Arsenal Resources LLC
ATTN: Craig Lavender, General Counsel
6031 Wallace Road Extension, Suite 300
Wexford, PA  15090

Telephone No.: 724-940-1100
Email: clavender@arsenalresources.com

(d)     Governing Law and Jurisdiction. The Parties intend that this Agreement be construed and enforced in accordance with Pennsylvania Law without, so far as may be allowed by Law, consideration of any jurisdiction's choice of law principles. Subject to Article 16, the Parties submit irrevocably to the jurisdiction of the state and federal courts situate in Pennsylvania and shall not assert any defense, including without limitation, any claim of *forum non conveniens,* to avoid such jurisdiction.

(e)     LIMITATION FOR CONSEQUENTIAL DAMAGES. UNDER NO CIRCUMSTANCES WILL EITHER PARTY BE LIABLE TO THE OTHER FOR PUNITIVE, EXEMPLARY, SPECIAL, INDIRECT, OR CONSEQUENTIAL DAMAGES, INCLUDING ANY LOSS OF PROFIT OR BUSINESS INTERRUPTIONS OR LOSS OR DELAY OF PRODUCTION, REGARDLESS OF WHETHER SUCH DAMAGES ARE REASONABLY FORESEEABLE, RESULTING FROM OR ARISING OUT OF THIS AGREEMENT. THE PRECEDING SENTENCE WILL NOT, HOWEVER, OPERATE TO LIMIT THE INDEMNITY OBLIGATIONS OF EITHER PARTY PROVIDED FOR HEREUNDER.

(f)     Affiliates. If an Affiliate of Contractor performs services or provides Goods to Company and such Affiliate is not a party to an agreement with Company, then Contractor will be responsible for the obligations and responsibilities of such Affiliate as if such Affiliate were performing such services or providing such Goods pursuant to this Agreement.

7232507.7

(g) <u>References</u>. Except as otherwise expressly provided herein or unless the context otherwise requires: (i) the expressions "herein", "hereto", "hereunder" and similar expressions refer to this Agreement; (ii) references made in this Agreement, including use of a pronoun, are intended to include where applicable, masculine, feminine, singular or plural, individuals or entities; (iii) the term "including" or "includes" means "including, without limitation"; (iv) where a word or phrase is defined herein, each of its other grammatical forms will have a corresponding meaning; (v) a reference to any party to this Agreement or any other agreement or document will include such party's predecessors, successors and permitted assigns; and (vi) references to any agreement or contract are to that agreement or contract as amended, modified or supplemented from time to time and in accordance with the terms hereof and thereof.

(h) <u>Non-Waiver of Rights</u>. The failure of either Party to demand strict performance of the terms of or to exercise any right conferred by this Agreement is not intended by the Parties to be construed as a waiver or relinquishment of its right to assert or rely upon any term or right in the future, or as a consent to any continuing or subsequent failure or breach.

(i) <u>Severability</u>. If any provision or any part or portion of any provision of this Agreement becomes or is declared to be unlawful, invalid, void, or otherwise unenforceable, the rights and obligations of the Parties will be reduced only as much as is required to remove the unenforceability. The balance of this Agreement will remain in effect.

(j) <u>Headings</u>. Article and Section headings are inserted for convenience and are not intended to have any effect on the interpretation or construction of this Agreement.

(k) <u>Counterparts</u>. This Agreement may be executed in two or more counterparts, each of which will be deemed to be an original, but all of which will constitute one and the same agreement. Each such counterpart may be executed and delivered in PDF or other similar format, and when so executed and delivered, will be deemed an original and all such counterparts together will constitute only one original.

(l) <u>Survival</u>. Notwithstanding any provisions herein to the contrary, upon the termination of this Agreement for any reason whatsoever, the provisions of Articles 3, 05, 6, 7, 8, 9, 10, 11, 12, 13, 15, 16 and 17 will survive such termination and be binding until any actions, obligations and/or rights therein provided have been satisfied or released.

(m) <u>Entirety and Amendment</u>. This Agreement supersedes and replaces all prior or contemporaneous agreements between the Parties regarding its subject matter,

*VC*

whether oral, written, or formed by a course of dealing. No amendment to this Agreement will be valid unless it is in writing and signed by each Party.

*[Signature page to follow]*

IN WITNESS WHEREOF, the Parties have, as the case may be, executed or caused their duly authorized representatives to execute this Agreement as of the date first written above.

COFANO ENERGY SERVICES, LLC

By: _____

Print Name: Kurt Cofano

Title: CEO


ARSENAL RESOURCES LLC

By: _____

Print Name: Jonathan K. Sheldon

Title: Senior Vice President, Operations & COO


*[Signature Page to Master Service Agreement]*

# EXHIBIT A – Tier 2
# MINIMUM INSURANCE REQUIREMENTS

In order to verify that all insurance coverage required by the Agreement is in place, Company's procedures require that Contractor deliver a Certificate of Insurance from Contractor's insurance agent or companies and verify Subcontractors' insurance compliance per the terms of the Agreement within ten days of the Effective Date, but in any event prior to Contractor or any Subcontractor commencing services under the Agreement, unless Company waives this requirement in writing. If any of the insurance coverage listed below is not applicable to the type of service being performed by a Subcontractor, then such Subcontractor will not be required to carry the non-applicable coverage.

The following coverage requirements apply to Contractor and applicable Subcontractors:

1. **Comprehensive General Liability Coverage**
   $1,000,000 each Occurrence / $2,000,000 Aggregate
   - Premises / Operations
   - Products and Completed Operations
   - Blanket Contractual Liability
   - Blowout & Cratering
   - Explosion, Collapse, & Underground
   - Sudden & Accidental Pollution

2. **Automobile Liability**
   $1,000,000 Combined Single Limit
   - Any Auto – Symbol 1, or
   - All Owned, Non-Owned and Hired
   - MCS 90 Endorsement as applicable for FHWA and ICC Hazmat transport compliance
   - Cargo Insurance as applicable for transport of Company property

3.  **Workers' Compensation and Employer's Liability**
    Coverage A                                    Statutory for states of operations.
    Coverage B – Employer's Liability             $1,000,000 Bodily Injury
    Bodily Injury by Disease                      $1,000,000
    Bodily Injury by Disease                      $1,000,000 Aggregate
    - Other States' Insurance
    - Monopolistic state Certificate of Insurance (OH, ND)
    - Broad Form endorsement required if performing services in WV
    - Alternate Employer Endorsement in favor of Company

4.  **Umbrella/Excess Liability**
    $5,000,000 each Occurrence / $5,000,000 Aggregate
    - Scheduled Underlying (GL, Auto, and EL)
    - Premises / Operations
    - Products and Completed Operations
    - Blanket Contractual Liability
    - Blowout & Cratering
    - Explosion, Collapse, & Underground
    - Sudden & Accidental Pollution

Certificates of insurance must note the following and be accompanied by endorsement or policy provision providing for:

➤ **Arsenal Resources LLC** and each member of **Company Group** are Additional Insureds as their interests may attach*

➤ A blanket waiver of subrogation is in place in favor of **Arsenal Resources LLC** and each member of **Company Group**

➤ Coverage is Primary over any insurance coverage maintained by **Arsenal Resources LLC** and each member of **Company Group***

➤ 30-day Notice of Cancellation or Material Change

\* Not applicable to workers compensation coverage

*EXHIBIT A – Tier 2*
*Master Service Agreement*

ii