IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br>ARSENAL RESOURCES DEVELOPMENT HOLDINGS I LLC <br><br>Reorganized Debtors. | Chapter 11 <br><br> Case No. 19-12352 (BLS) |
| ARSENAL RESOURCES LLC, *et al.*, <br><br>Plaintiffs, <br><br>v. <br><br>BAYOU CITY EQUIPMENT, LLC, *et al.* <br><br>Defendants. | Adv. Pro. No. 19-51169 (BLS) <br>(Re: Docket Nos. 117, 119, 120) |

## OPINION REGARDING SUMMARY JUDGMENT MOTIONS

### BACKGROUND

Arsenal Resources LLC ("Arsenal" or the "Debtor") commenced the above-captioned adversary proceeding by filing a complaint for interpleader[1] of funds in the amount of $1,371,569.22 (the "Interpleader Funds") over which various defendants have competing claims for work performed under a construction contract. Through a series of settlements and agreements, a good portion of the Interpleader Funds have been paid to certain defendants, while the amount of $223,408.13 remains (the "Remaining Funds"). The following three defendants assert claims to the Remaining Funds: (1) Capital Foundry Funding, LLC, ("Capital

---

[1] Adv. D.I. ¶ 1

1

Foundry"), (2) United Rentals (North America), Inc. ("United Rentals"), and (3) Gwinnup's Restoration and Environmental Services, Inc. (Gwinnup) (collectively the "Remaining Defendants").

Before the Court are the Remaining Defendants cross-motions for partial summary judgment on the issue of priority rights to the Remaining Funds.[2] All issues relating to the validity and the amount of any claims are reserved by the parties for later determination. For the reasons that follow, the court will grant the motions filed by United Rentals and Gwinnup, and deny Capital Foundry's motion.

## FACTS

The Remaining Defendants have submitted the following stipulated facts in connection with the summary judgment motions (the "Adversary Proceeding").

1. The Debtor and Cofano Energy Services, LLC ("Cofano") entered into the Master Service Agreement ("MSA") dated January 30, 2019, for the construction of the Pritt Well Connect Project (the "Project") located in West Virginia.[3]

2. Debtor was a Pennsylvania limited liability company with its principal place of business in Pennsylvania.[4]

3. At all relevant times, Cofano was a limited liability company with its principal place of business in Pennsylvania.[5]

---

[2] D.I. 117, 119, 120 – Motions for Summary Judgment
[3] D.I. 115 – Stipulation of Uncontested Facts ¶ 1
[4] *Id*. at ¶ 4
[5] *Id*. at ¶ 3

2

4. The MSA contained a choice of law provision mandating that all disputes arising between the parties be governed by Pennsylvania law. The Debtor and Cofano agreed that the MSA would be "construed and enforced in accordance with Pennsylvania law without, so far as may be allowed by Law, consideration of any jurisdiction's choice of law principles."[6]

5. Cofano subcontracted with Gwinnup and United Rentals to perform work on the Project (collectively, the "Subcontractors").[7]

6. Gwinnup supplied labor and materials to Cofano for the Project, and United Rentals provided rental equipment.[8]

7. All construction work for the Project was conducted in West Virginia.[9]

8. Cofano has been defaulted in this Adversary Proceeding, and no longer claims any interest in the interpleader funds except through its assignee, Capital Foundry.[10]

9. The Subcontractors claim priority to the Remaining Funds based on an equitable lien on such funds arising out of the supply of labor and materials described above.[11]

10. Capital Foundry claims priority to the Remaining Funds based on a Loan Agreement, Security Agreement and Promissory Note between itself and

---

[6] *Id*. at ¶ 2 and Exhibit 1
[7] *Id*. at ¶ 5–9
[8] *Id*. at ¶ 12
[9] *Id*. at ¶ 10
[10] *Id*. at ¶ 12
[11] *Id*. at ¶ 14–15

Cofano, as well as an assignment of accounts receivable from Cofano to Capital Foundry.[12]

11. United Rentals claims entitlement to $29,137.03, and Gwinnup claims entitlement to $194,271 of the Remaining Funds.[13]

12. Capital Foundry claims entitlement to $223,408.13 of the Remaining Funds.[14]

## JURISDICTION

This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§1334 and 157(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (K).

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[15] An issue of material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[16] Rule 7056 of the Federal Rules of

---

[12] *Id*. at ¶ 16
[13] *Id*. at ¶ 18
[14] *Id*. at ¶ 18
[15] FED. R. CIV. P. 56(a).
[16] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

Bankruptcy Procedure incorporates Rule 56 of the Federal Rules of Civil Procedure.[17]

The purpose of summary judgment is "to isolate and dispose of factually unsupported claims or defenses."[18] The movant bears the burden of establishing the absence of a genuine issue of material fact.[19] If the movant is successful, the burden then shifts to the respondent to establish that summary judgment is not warranted.[20] The opposing party must produce specific facts that establish the existence of a genuine dispute.[21] It is not sufficient to defeat a motion for summary judgment for the respondent to merely allege a factual dispute.[22]

Further, the Court must view all facts and draw all inferences in favor of the respondent.[23] A motion for summary judgment may be denied only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."[24] Therefore, the Third Circuit Court of Appeals has held that "in all cases summary judgment should be granted if, after drawing all reasonable inferences from the underlying facts in the light most favorable to the nonmoving party, the court concludes that there is no genuine issue of material fact to be resolved at trial and the moving party is entitled to judgment as a matter of law."[25]

---

[17] Fed. R. Bankr. P. 7056.
[18] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).
[19] *Id.* at 322-23.
[20] *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).
[21] *Id.* at 587.
[22] *Anderson*, 477 U.S. at 247-48.
[23] *Id.* at 261 n.2; *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).
[24] *Matsushita*, 475 U.S. at 587 (citation omitted).
[25] *Petruzzi's IGA Supermarkets v. Darling-Del. Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993).

Finally, the standard for summary judgment remains unaffected where the parties have filed cross-motions for summary judgment. In deciding cross-motions for summary judgment, the Court must consider each party's motion separately and independently.[26]

## DISCUSSION

A. <u>Choice of Law Provision</u>

Neither party disputes the presence of the choice of law clause — which provides that Pennsylvania law shall govern — contained in the MSA originally entered into between the Debtor and Cofano. However, Capital Foundry, as assignee of Cofano, asserts that West Virginia law should govern the dispute over which party has priority to the Remaining Funds, on the grounds that the Property is located in West Virginia and all relevant work occurred there. By contrast, the Subcontractors contend that Pennsylvania law should govern the underlying dispute based on the choice of law provision contained in the MSA. The Court agrees with the Subcontractors that Pennsylvania law governs the priority of funds.

Under Delaware law, choice of law provisions contained in contracts are enforced so long as they have a material relationship to the transaction.[27] Contractually agreed-upon choice of law provisions are given effect unless:

1. the chosen state has no substantial relationship to the parties to the transaction and there is no other reasonable basis for the parties' choice; or
2. the application of the law of the chosen state would be contrary to the fundamental policy of a state which has a materially greater

---

[26] *Panhandle E. Pipe Line Co. v. Utilicorp United Inc.*, 928 F. Supp. 466, 470 (D. Del. 1996) (*citing Williams v. Phila. Hous. Auth.*, 834 F. Supp. 794, 797 (E.D. Pa. 1993), aff'd, 27 F.3d 560 (3d Cir. 1994)).
[27] *See In re OSC 1 Liquidating Corp.*, 529 B.R. 825, 831 (Bankr. D. Del. 2015).

interest than the chosen state in the determination of the particular issue and . . . would be the state of the applicable law in the absence of an effective choice of law by the parties.[28]

Here, nothing in the current set of facts indicates there is either a lack of a substantial relationship to the chosen state, or a lack of a reasonable basis for the original parties' choice.[29] Both the Debtor and Cofano, the original parties to the MSA, maintain their principal places of business in Pennsylvania and bargained to have Pennsylvania law apply to their contract. Additionally, Capital Foundry, as a party to this action and who now stands in the shoes of Cofano, is bound by the original terms of the MSA.[30] This Court is satisfied that a material relationship between Pennsylvania and Capital Foundry exists.

Further, even if West Virginia had a materially greater interest to the determination of the parties' priority to the funds, it cannot be said that the application of Pennsylvania law in the current context is contrary to any fundamental policy of West Virginia. West Virginia has long recognized the priority of obligations owed to subcontractors and materialmen.[31] For these reasons, this Court holds that Pennsylvania law governs the priority allocation of the Remaining Funds.

---

[28] *Welded Constr., L.P. v. Williams Cos. (In re Welded Constr., L.P.)*, 616 B.R. 649, 657 (Bankr. D. Del. 2020).
[29] *See Abry Partners V, L.P. v. F & W Acquisition LLC,* 891 A.2d 1032, 1048 (Del. Ch. 2006) ("When parties have chosen a state's contract law to govern their contract, it is illogical to assume that they wished to have the enforceability of that contract judged by another state's law.").
[30] *See In re ANC Rental Corp.*, 277 B.R. 226 (Bankr. D. Del. 2002) (holding that debtor may not assume only part of a contract but must assume the entire agreement).
[31] *See e.g. Capon Valley Bank v. State Rd. Comm'n*, 111 W. Va. 491, 493 (1932) ("That laborers and materialmen take preference in payment over assignments made to general creditors was decided in *State v. Code*, 103 W. Va. 676, 138 S.E. 324"); *see also L.A. Pipeline Constr., Inc. v. Glass Bagging Enters.* 2016 W. Va. LEXIS 795 (2016) (footnote 13 notes that the trial court found an equitable lien in favor of a subcontractor on a pipeline project).

B. <u>Priority of Funds</u>

The final issue before this Court is the allocation of the Remaining Funds. The core of Capital Foundry's argument is that Pennsylvania courts recognize that equity cannot be a substitute remedy for parties who fail to statutorily protect their interests, where the statutory remedy is adequate to prevent the harm.[32] Capital Foundry maintains that the Subcontractors could have asserted mechanic's liens, and having failed to do so, they are now improperly attempting to substitute an equitable remedy for one of law. This line of reasoning has been considered and rejected by Pennsylvania courts.[33]

In *Williard*, the Pennsylvania Supreme Court addressed whether interpled funds otherwise owed to a general contractor for work on a construction project were instead property of subcontractors who had not been paid in full for their respective contribution.[34] The court held that the subcontractors maintained superior rights to the funds because the original contract between the general contractor and owner allowed the owner to withhold funds until presented with satisfactory evidence of payment to subcontractors.[35] In doing so, the Supreme Court of Pennsylvania expressly reversed the Pennsylvania Superior Court's holding that the subcontractor's rights to the funds were extinguished due to their failure to file liens.[36] Rather, under the contract, it was the general contractor's

---

[32] *See, e.g., Chartiers Valley Sch. Dist. v. Va. Mansions Apts.*, 489 A.2d 1381, 1391 (Pa. Super. Ct. 1985).
[33] *Williard, Inc. v. Powertherm Corp.*, 444 A.2d 93 (Pa. 1982).
[34] *Id*.
[35] *Id*. at 97.
[36] *Id*. at 96.

rights that were extinguished upon his failure to pay the subcontractors.[37] Like the *Williard* court, this Court agrees that "equity and justice would recognize the subcontractors' claims against the contract balance."[38]

Similarly, in *Trevdon Bldg. Supply.*, under nearly identical facts, the Pennsylvania Supreme Court again held that a subcontractor had an equitable lien that was superior to that of a factoring company in a dispute over interpled funds.[39] While there was no explicit mention of mechanic's liens in *Trevdon*, this Court notes that there would be no need to address equitable liens had adequate statutory remedies been available.

As in both *Williard* and *Trevdon*, the MSA here contains a specific and standard provision requiring Cofano to prevent any mechanic's liens from being asserted against the property and permitting the owner to withhold payment if subcontractors were unpaid. Accordingly, applying Pennsylvania law to this dispute, this Court holds that the Subcontractors enjoy an equitable lien on the Remaining Funds and are entitled to those monies ahead of Capital Foundry.[40]

---

[37] *Id*. at 97. The court considered the general contractor's failure to pay subcontractors a material breach of the original contractor between the owner and general contractor. Consequently, the general contractor had no cognizable interest in the interpled funds. *Id*.

[38] *Id*.

[39] *Trevdon Bldg. Supply v. Toll Bros.,* 996 A.2d 520 (Pa. Super 2010).

[40] The Court today does not reach a conclusion on whether the Subcontractors are third party beneficiaries under the MSA. While the parties have briefed the issue, and this Court finds the Subcontractors arguments plausible and even persuasive, the record before the Court on summary judgement is not sufficiently developed for the Court to rule on this ground.

## CONCLUSION

For the foregoing reasons, this Court will grant the motions for summary judgment filed by United Rentals and Gwinnup. This Court will deny the motion for summary judgment filed by defendant Capital Foundry. An appropriate order follows.

Dated: Wilmington, DE
      October 26, 2022

Brendan Linehan Shannon
United States Bankruptcy Judge